UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWENA R. HEGNA, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>JOHN W. SNOW, Secretary of the Treasury, et al.,<br><br>            Defendants. | Civil Action 03–01479 (HHK) |

**MEMORANDUM OPINION**

Charles Hegna was an American killed in an airplane hijacking carried out by Hezbollah, a terrorist organization supported by Iran. On January 22, 2002, this court entered a default judgment against Iran in the amount of $42 million in compensatory damages and $333 million in punitive damages in favor of Hegna's estate, his widow, Edwina Hegna, and their four children ("Hegnas"). In an effort to collect the full amount of their judgment, the Hegna's filed the instant action seeking declaratory relief. The Hegnas ground their action on the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Mandamus Act, 28 U.S.C. § 1361. Before the court is defendants' motion to dismiss or, in the alternative, for summary judgment [Dkt # 22]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted.

## I. BACKGROUND

The Victims of Trafficking and Violence Protection Act of 2000 ("VPA"), Pub. L. No. 106–386, § 2002, 114 Stat. 1464, 1541–43, as amended by the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107–297, 116 Stat. 2322, provides for the payment and enforcement of certain judgments against foreign states in cases brought pursuant to the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605, as amended. Specifically, it provides for payment of compensatory damages to several classes of "covered persons" who hold judgments against Iran and who relinquish certain enumerated claims and rights. VPA § 2002(a)(2). The Hegnas are "covered persons."

Under the VPA, "covered persons" can elect to receive payment of their judgments in the amount of either (a) 100% of their compensatory damages award or (b) 110% of their compensatory damages award, subject to relinquishment of certain rights. VPA § 2002(a)(1)–(2). The VPA specifies two sources from which payments are to be made:

> (A) rental proceeds accrued on the date of enactment of this Act from Iranian diplomatic and consular property located in the United States; and

> (B) funds not otherwise made available in an amount not to exceed the total of the amount in the Iran Foreign Military Sales Program account within the Foreign Military Sales Fund on the date of the enactment of this Act.

VPA § 2002(b)(2). In the event the amount of money contained in these two sources is inadequate to pay all of the holders of judgments against Iran either 100% or 110% of their compensatory damages awards, eligible judgment holders are entitled to pro rata payment of the

remaining funds in accordance with certain formulae.[1] TRIA § 201(c)(4). The Hegnas are subject to the provisions concerning pro rata payments.

Under the pro rata provisions, persons receiving pro rata payments from the Treasury Department in an amount less than the full amount of their compensatory damages awards are required to relinquish certain rights, including "all rights and claims to punitive damages" and "all rights to execute against or attach property that is at issue in claims against the United States before an international tribunal." TRIA § 201(c)(4) (amending VPA § 2002(a)(2)). The TRIA also provides for distribution of all remaining money in the two funds. TRIA § 201(d)(3) ("after the disbursement of all payments under [the pro rata payment scheme], the Secretary shall make an additional payment to each person who received a [pro rata] payment . . . in an amount equal to a share . . . of the balance of the amounts . . . that remain following the disbursement of all [pro rata] payments . . .").

---

[1]  Section 201(d)(1) of the TRIA provides:

(A) IN GENERAL.–In the event that the Secretary determines that 90 percent of the amounts available . . . are inadequate to pay the total amount of compensatory damages awarded in judgments issued as of [November 26, 2002] . . . with respect to Iran, the Secretary shall . . . make payment from such amounts available to be paid . . . to each party to which such a judgment has been issued in an amount equal to a share . . . of 90 percent of the amounts available to be paid
 . . . .

(B) CALCULATION OF PAYMENTS. –The share that is payable to a person under subparagraph (A) . . . shall be equal to the proportion that the amount of unpaid compensatory damages awarded in a final judgment issued to that person bears to the total amount of all unpaid compensatory damages awarded to all persons to whom such judgments have been issued as of [November 26, 2002].

Pursuant to regulations published in the Federal Register, plaintiffs who hold judgments making them eligible for payment under the VPA, as amended, were required to submit application materials to Treasury's Office of Foreign Assets Control ("OFAC") by April 7, 2003. Payments to Persons Who Hold Certain Categories of Judgments Against Cuba or Iran, 68 Fed. Reg. 8077 (Feb. 19, 2003), amended by 68 Fed. Reg. 9745 (Feb. 28, 2003). The application included a signed declaration as to which payment option the judgment holders had selected and their acknowledgment of the TRIA's relinquishment provisions and the potential adjustments to their payments should Treasury determine that available funds were insufficient to compensate the judgment holders in full. The Hegnas submitted such an application on March 20, 2003, which included relinquishment declarations signed by each family member. Declaration of R. Richard Newcomb ("Newcomb Decl."); Defs.' Ex. I ¶ 5.

On June 3, 2003, after the deadline for submission of applications, Treasury determined that there were insufficient funds to pay each applicant's full judgment, finding that "90 percent of the amounts available to be paid under Section 2002(b)(2) are inadequate to pay the total amount of compensatory damages awarded in judgments issued as of November 26, 2002."[2] Defs.' Ex. H. In a letter to the Hegnas, dated June 27, 2003, Treasury detailed the calculated pro

---

[2] Treasury states that "[o]nly following the deadline for submission of applications and the time necessary to review applications for eligibility, was the Secretary in a position to know which, if any, eligible claimants had elected to receive *pro rata* payments in lieu of proceeding with litigation." Defs.' Mot. to Dismiss at 14. Four plaintiff groups newly eligible for payment under the TRIA submitted applications to Treasury. In addition to the Hegnas, the plaintiffs in *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97 (D.D.C. 2000) (holding a judgment for $11.7 million in compensatory damages); *Mousa v. Islamic Republic of Iran*, 238 F. Supp. 2d 1 (D.D.C. 2001) (holding a judgment for $12 million in compensatory damages); and *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002) (holding a judgment for $33 million in compensatory damages), were eligible. *See* Defs.' Ex. B at 38–39.

rata shares to which the Hegnas would be entitled under the TRIA and explained that "[t]he relinquishment of rights that is required by Section 2002 of each claimant with an Iran-related judgment takes effect on the date upon which OFAC issues a pro rata payment from either of the funding sources specified . . . ." Compl. Ex. 2.  Treasury also stated that the Hegnas had until July 7, 2003, to withdraw their applications before the VPA pro rata payments were distributed and their relinquishment agreements took effect. *Id*.

The Hegnas filed this action on July 7, 2003, initially seeking a temporary restraining order and an injunction to prevent Treasury from "taking any action to force the Plaintiffs to make an election to relinquish their attachments rights under FSIA in order to receive the partial payments promised [pursuant to the VPA]." Compl. ¶ 22.  While this court issued a temporary restraining order in order to review the Hegnas' claim, it eventually denied their request for a preliminary injunction.  The court also extended the application withdrawal deadline from July 7, 2003, to July 18, 2003.  However, the Hegnas did not withdraw their applications and Treasury proceeded to disperse the VPA pro rata payments of approximately $8.3 million to them.

## II.  ANALYSIS

The Hegnas seek declaratory relief only.  In Counts I and II, they request a declaratory judgment that they are entitled to the full payment of their $42 million compensatory damages award under the VPA or, in the alternative, that they are entitled to an additional $1,647,692.  In Count III, they ask the court to declare that they are entitled to know how much money was in the appropriated funds.  Treasury moves to dismiss Counts I and II for lack of subject matter jurisdiction and all counts for failure to state a claim.  The court examines each asserted basis for dismissal in turn.

**A. Jurisdiction**

Article III of the United States Constitution empowers federal courts to adjudicate only what are deemed to be actual cases or controversies. *Allen v. Wright*, 468 U.S. 737, 750 (1984). At the very least, the claim must be within the confines of various doctrines of justiciability, which is to say that the parties must have standing, the claim must be ripe, and it must not be moot. *See Nat'l Treas. Employee Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). In cases involving appropriation of federal funds, when a party requests monetary relief from funds that have already been exhausted or otherwise obligated, courts lack jurisdiction because the claim is moot. *City of Houston v. Dep't of Housing and Urban Dev.*, 24 F.3d 1421, 1424 (D.C. Cir. 1994) ("It is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation."). In the context of a request for declaratory relief, "if a plaintiff challenges both a specific agency action and the *policy* that underlies the action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency is moot." *Id.* at 1428. However, if a plaintiff "merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful . . . ." *Id.* at 1429.

In Counts I and II, the Hegnas request a declaratory judgment that they are entitled to recover the entirety of their $42 million judgment in compensatory damages or, alternatively, that they are entitled to an additional $1,647,692. They do not challenge the policy underlying the payment of funds, rather, they expressly request relief only for the specific payment to which they

believe they alone are entitled.  *See* Am. Compl. at 13.  As such, their claims for declaratory relief are moot if the funds from which they would eventually seek payment have been exhausted.

Treasury asserts that the Hegna's claims are moot because "the only two sources of funds identified by Congress from which the United States is authorized to make payments to Iranian judgment creditors have either been fully paid out or are already fully obligated." Defs.' Mot. at 18.  Treasury is correct.  There was approximately $21.8 million available for payment to pro rata claimants under the TRIA.[3]  The four groups of eligible plaintiffs collectively held judgments for approximately $98.7 million, with the Hegnas' judgment accounting for 42.55% of that total.  Under the TRIA, if Treasury determines that 90% of the available funds are not enough to cover all the judgments in their entirety, it shall distribute that 90% on a pro rata basis.  TRIA § 201(d)(1)(A).  Treasury made such a determination on June 3, 2003, and it subsequently divided 90% of the $21.8 million, or $19.62 million, according to its predetermined pro rata payment scheme.[4]  The Hegnas concede that they received payments on July 29, 2003, and November 20, 2003, Pls.' Opp'n at 6, which amounted to approximately $8.3 million.[5]  Defs.' Ex. B at 39.  The other eligible judgment holders also received pro rata payments on those dates.  Newcomb Decl. ¶¶ 6, 8.  Thus, there is no dispute that 90% of the funds have been exhausted.  The remaining

---

[3] This includes approximately $14 million from the Foreign Military Sales ("FMS") Fund and approximately $7.8 million in accrued rental proceeds.  68 Fed. Reg. at 8082.

[4] There does not appear to be any doubt that Treasury abided by its payment scheme, for the Hegnas received approximately $8.3 million, which is 42.55% of $19.62 million.

[5] The Hegnas state that they received the second payment on November 20, 2003, but it appears that the payment was actually received on November 12, 2003.  Newcomb Decl. ¶ 8.

10% is similarly already obligated, for the TRIA explicitly controls the disbursal of any balance that remains in the funds.[6]  TRIA § 201(d)(2), (3).  Because all the appropriated money has been either exhausted or otherwise obligated, any claim for monetary judgment is moot.  Consequently, the Hegnas' claims for specific declaratory relief that they are entitled to additional payment are also moot.

**B. Failure to State a Claim**

The only remaining claim, set forth in Count III, is the Hegna's request for information regarding how Treasury determined that the fund made up of rental proceeds contained $7.8 million.[7]  Am. Compl. ¶ 26 ("The Plaintiffs have no knowledge or information as to how the Defendants arrived at their determination that the rental proceeds amount to $7.8 million, and no knowledge or information as to whether the fund was liquidated and held at interest . . . .  The Defendants are required to disclose this information and to make proper payment to the Plaintiffs for the sum due to them.").  Simply put, the Hegnas have not identified a cause of action that might afford such relief.[8]  Accordingly, this claim must be dismissed.

---

[6] It seems conceivable that the Hegnas may be entitled to receive a portion of the remaining 10% of funds.  However, because the statute has already determined how that money is to be distributed, the court has no authority to order expenditure of said funds.

[7] Though Treasury construes Count III of the Hegnas' amended complaint to also allege that additional funds should have been included as part of the appropriation, the Hegnas neglect to even mention such an assertion in their opposition brief; they focus simply on their prayer for the court to declare that they are entitled to know how much money was in the VPA fund.  Pls.' Opp'n at 24 ("this case . . . is simply a determination of the proportionate share due to the Hegnas").

[8] The causes of action cited by plaintiffs are the APA, the Declaratory Judgment Act, and the Mandamus Act, none of which provide the requested relief.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. An appropriate order accompanies this memorandum.

                                           Henry H. Kennedy, Jr.
                                           United States District Judge

Dated:  September 27, 2005